1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

FRANK TRUJILLO,                          )
                                         )
                    Plaintiff,           )
                                         )        3:10-cv-00360-RCJ-VPC
        vs.                              )
                                         )
RYAN POWELL et al.,                      )              **ORDER**
                                         )
                    Defendants.          )
_____   )

        This case arises out of a traffic stop, arrest, and confinement.  Pending before the Court is

Defendants' Motion for Summary Judgment (ECF No. 23).  A response was due in February,

and Plaintiff untimely responded in July.[1]  For the reasons given herein, the Court grants the

motion.

**I.      FACTS AND PROCEDURAL HISTORY**

        On October 15, 2008, Defendants Sergeant Ryan Powell and Deputy Wayne Hawley of

the Lyon County Sheriff's Department stopped Plaintiff Frank Trujillo and his son Jay near the

intersection of U.S. Highway 50 and State Highway 341 in Mound House, Nevada. (*See* Compl.

¶¶ 2–3, 7–10, June 15, 2010, ECF No. 1).  Although Powell and Hawley allege they recorded

_____

        [1]Plaintiff attaches two pieces of evidence to his untimely response: (1) his attorney's
declaration to the effect that a certain criminal case against Plaintiff was dismissed (presumably
the case arising out of the incident at issue in this case, although not explicitly so stated); and (2)
a copy of Plaintiff's answers to certain interrogatories, which document is not authenticated by
Plaintiff's affidavit, is not itself attested to under oath, and is not even signed by Plaintiff but by
Plaintiff's attorney.

Plaintiff traveling at 55 m.p.h. in a 45-m.p.h. zone, Plaintiff maintains that he was traveling at or below 45 m.p.h. and believes Powell and Hawley were motivated by racial animus against him. (*See id.* ¶¶ 7–9).

When Plaintiff pulled over, Hawley approached the vehicle on foot, speaking a command Plaintiff did not understand, and Plaintiff responded, "What the fuck do you want?" (*See id.* ¶¶ 12–13). Plaintiff turned to face Hawley and accidentally activated the power window with his knee, which caused Hawley to shout "Step out of the vehicle!" (*Id.* ¶ 14).[2] Plaintiff complied, and Hawley walked Plaintiff to his patrol car while holding his arm, at which time a second patrol car arrived. (*Id.* ¶¶ 14, 16). Hawley and Powell asked Plaintiff if he had been drinking, and Plaintiff answered that he hadn't been. (*Id.* ¶ 17). Two unknown male officers—presumably those who had arrived in the second patrol car—then walked to Plaintiff's truck, caused Jay to exit, asked Jay if he had been drinking, and searched him without consent. (*See id.* ¶ 18). Hawley then tightly handcuffed Plaintiff's hands behind his back, which cut off his circulation until Hawley loosened the handcuffs five minutes later and put Plaintiff in waist restraints. (*Id.* ¶¶ 19–20). Plaintiff alleges he has experienced numbness and pain in his hands since the arrest. (*See id.* ¶ 21). The officers then arrested Plaintiff and allowed Jay to follow them to the Lyon County Jail ("LCJ") in Plaintiff's truck. (*Id.* ¶ 23). During processing, officers gave Plaintiff two bottoms instead of a top and a bottom, allegedly because Hawley and Powell falsely told jail officials that Plaintiff had told them to "go get fucked." (*See id.* ¶¶ 25–26). Plaintiff spent three-and-a-half hours in a cold cell without a shirt. (*Id.* ¶ 27). Plaintiff alleges he has had "extensive medial treatment" for an unspecified disability due to his treatment at LCJ. (*See id.* ¶ 28). Hawley and Powell charged Plaintiff with "a misdemeanor, basic speed and license, dome light, obstructing and delay peace officer. [sic]" (*Id.* ¶ 29).

---

[2]In his deposition, Plaintiff testified alternately that it was the "power door lock" or "window switch." (*See* Trujillo Dep. 60:23, 61:14, Jan. 10, 2011, ECF No. 23-3).

Plaintiff sued Powell, Hawley, Lyon County, and Sheriff Allen Veil in this Court on five causes of action: (1) Unlawful Seizure and Excessive Force pursuant to 42 U.S.C. § 1983; (2) a *Monell* claim against Lyon County based on the same violations; (3) Assault and Battery; (4) Injunctive Relief; and (5) Punitive Damages.  Defendants have moved for summary judgment.

## II.   SUMMARY JUDGMENT STANDARDS

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  In determining summary judgment, a court uses a burden-shifting scheme:

> When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations and internal quotation marks omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III.   ANALYSIS

### A.     Unlawful Seizure and Excessive Force

There are three parts to this claim.  The officers may have violated the Fourth Amendment if they: (1) stopped Plaintiff in his truck without probable cause to believe he had committed a traffic offense (unlawful seizure); (2) arrested Plaintiff after the stop without probable cause to believe he had committed a misdemeanor or felony crime (unlawful seizure); or (3) effected the arrest in an unreasonable manner (excessive force).

#### 1.      Probable Cause for the Traffic Stop

Plaintiff alleges that he did not exceed the speed limit, and that Hawley and Powell

1    stopped him because of his race.  Only the former allegation is relevant to the Fourth

2    Amendment analysis. *See Whren v. United States*, 517 U.S. 806, 813 (1996) ("[T]he

3    constitutional basis for objecting to intentionally discriminatory application of laws is the Equal

4    Protection Clause, not the Fourth Amendment.  Subjective intentions play no role in ordinary,

5    probable-cause Fourth Amendment analysis.").  Defendants are entitled to summary judgment if

6    they had probable cause to believe Plaintiff had committed a traffic violation. *See id.* at 809–10.

7    And if Hawley and Powell stopped Plaintiff not to cite him for an offense but to *investigate* it,

8    e.g., drunken driving, they need only have had reasonable suspicion that Plaintiff had committed

9    that offense. *See United States v. Lopez-Soto*, 205 F.3d 1101, 1104–05 (9th Cir. 2000).

10        Officer Hawley attests that the segment of U.S. Highway 50 at issue had a posted speed

11   limit of 45 m.p.h. and that Powell believed Plaintiff was speeding based on both a visual

12   assessment and the fact that the radar device had measured Plaintiff's speed at 55 m.p.h. (*See*

13   Hawley Aff. ¶¶ 7–8, Feb. 4, 201, ECF No. 23-1).  This is enough for Defendants to meet their

14   initial burden on summary judgment as to whether a person of ordinary prudence would believe

15   Plaintiff had committed a traffic offense.  Plaintiff provides no contrary evidence, and it would

16   not aid him even if he were to attest to every fact in the Complaint.  Plaintiff alleges in the

17   Complaint only that he was not in fact speeding.  He does not allege that Hawley and Powell had

18   access to facts that contradicted Hawley's visual assessment and radar reading.  Only the latter

19   question is relevant to the probable cause analysis.  The Court therefore grants summary

20   judgment against this aspect of the unlawful seizure claim.

21        **2.        Probable Cause for the Arrest**

22        Hawley attests that he approached Plaintiff's truck along the driver side and that Powell

23   approached along the passenger side. (*See id.* ¶ 15).  Plaintiff did not turn the engine off. (*Id.*

24   ¶ 16).  Plaintiff kept looking forward and failed to react when Hawley first greeted him; then

25   Plaintiff looked at Hawley and said "What the fuck do you want?" when Hawley asked if

Plaintiff could hear him. (*Id.* ¶ 17).  Plaintiff refused to answer when Hawley asked him if he knew why Hawley had stopped him, and Plaintiff continued to yell obscenities at Hawley. (*Id.* ¶ 18).  Hawley told him he had been driving 55 m.p.h. in a 45-m.p.h. zone and told him to exit the vehicle, but Plaintiff refused until commanded several times. (*Id.* ¶¶ 19–20).  When he got out of the truck he appeared angry and walked toward Hawley in a threatening manner with his chest pushed out, so Hawley ordered him to stand on the white line on the shoulder of the road. (*Id.* ¶ 21).  Powell then took over the conversation with Plaintiff; Hawley never physically touched Plaintiff. (*Id.* ¶ 22).  An unidentified officer arrested Plaintiff for obstructing a public officer in violation of Nevada Revised Statutes ("NRS") section 199.280 and handcuffed him. (*Id.* ¶ 24).  Plaintiff did not complain to Hawley that his handcuffs were too tight. (*Id.* ¶ 25). Hawley and Powell took Plaintiff to LCJ. (*Id.* ¶ 26).  Powell's affidavit is consistent with Hawley's, and Powell notes that Plaintiff was argumentative and verbally abusive to both him and Hawley throughout the entire incident. (*See generally* Powell Aff., Feb. 4, 2011, ECF No. 23-2).  Powell was the officer who actually arrested Plaintiff; Plaintiff never complained to him that his handcuffs were too tight; and Plaintiff's cuffs were replaced with waist restraints after approximately five minutes so the ride to LCJ would be more comfortable. (*See id.* ¶¶ 21–22).

NRS section 199.280 makes it a misdemeanor offense for any person to "willfully resist[], delay[] or obstruct[] a public officer in discharging or attempting to discharge any legal duty of his or her office," unless a dangerous weapon or firearm is used, in which case it is a felony. *See* Nev. Rev. Stat. § 199.280.  A peace officer may arrest a person without a warrant for any public offense committed in the officer's presence. *See id.* § 171.124(1), (1)(a).  Powell was present when Plaintiff refused to cooperate at the scene.  The Court therefore grants summary judgment against this aspect of the unlawful seizure claim.

### 3.    Excessive Force

It is clear from the only relevant evidence adduced that only Powell used any force in the

arrest, and therefore only he could possibly be directly liable for excessive force. *See Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).  The use of handcuffs for five minutes where a Plaintiff does not even complain does not constitute excessive force in response to the lawful arrest of a belligerent suspect.  Plaintiff adduces no evidence to the contrary.

## B.    *Monell*

Because Plaintiff's rights were not violated by any officers, Lyon County cannot be liable under *Monell*.

## C.    **Assault and Battery**

The criminal code defines "battery" as "any willful and unlawful use of force or violence upon the person of another," *see* Nev. Rev. Stat. § 200.481, and the State Bar of Nevada suggests using this language to instruct juries in civil battery cases, *see* State Bar of Nevada, Nev. J.I. - Civil, 6IT.2 (2011).  The Nevada Supreme Court does not appear to have expressly adopted a definition of civil battery, so the federal courts have relied on the Restatement. *See, e.g., Switzer v. Rivera*, 174 F. Supp. 2d 1097, 1109 (D. Nev. 2001) (Hunt, J.) (citing Restatement (Second) of Torts §§ 13, 18 (1965)).  Under the Restatement:

> An actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results.

Restatement (Second) of Torts § 13.  Section 18 replaces "a harmful" with "an offensive."  In other words, battery requires (1) an intent to cause harmful or offensive contact or the imminent apprehension of harmful or offensive contact (2) that results in harmful or offensive contact. *See* Restatement (Second) of Torts §§ 13, 18.  An assault is essentially an incomplete battery. The intent required is the same, but the result need only be the imminent apprehension of harmful or offensive contact. *See id.* § 21(1).

In Nevada, certain government actors have discretionary immunity from common law

claims. Nev. Rev. Stat. § 41.032.  This section of the code immediately follows the section that

waives the state's common law sovereign immunity but retains the state's Eleventh Amendment

protection. *See* § 41.031.  The discretionary immunity statute specifically refers to actions

brought "against an immune contractor or an officer or employee of the State or any of its

agencies or political subdivisions." § 41.032.  On its face, this statute does not immunize

municipal governments or their employees, because in light of modern case law, municipalities

are considered independent corporations or "persons" with their own identities, not mere

political subdivisions of the state, at least in the eyes of Congress. *See Monell v. Dep't of Social

Servs. of City of New York*, 436 U.S. 658, 690 (1978).  The Nevada Supreme Court, however, has

implicitly assumed, without directly addressing the question, that municipalities are political

subdivisions of the state for the purposes of the discretionary immunity statute. *See, e.g.*,

*Travelers Hotel, Ltd. v. City of Reno*, 741 P.2d 1353, 1354–55 (Nev. 1987).  This construction is

consistent with *Monell*, because the discretionary immunity statute only protects state and

municipal agencies against state causes of action.

  The question remains whether there is discretionary immunity as a matter of law in this

case.  The statute immunizes municipal agencies and their employees against actions:

> [b]ased upon the exercise or performance or the failure to exercise or perform a
> discretionary function or duty on the part of the State or any of its agencies or
> political subdivisions or of any officer, employee or immune contractor of any of
> these, whether or not the discretion involved is abused.

§ 41.032(2).  In interpreting this statute, the Nevada Supreme Court has explicitly adopted the

two-part test for discretionary immunity under the Federal Tort Claims Act, under which there is

discretionary immunity when: (1) the allegedly negligent acts involve elements of judgment or

choice; (2) and the judgment or choice made involves social, economic, or political policy

considerations. *Martinez v. Maruszczak*, 168 P.3d 720, 722 (Nev. 2007) (citing *Berkovitz v.

United States*, 486 U.S. 531 (1988); *United States v. Gaubert*, 499 U.S. 315 (1991)).  A court

does not ask whether the official abused his or her discretion, *see* § 41.032(2), but only whether the acts concerned a matter in which the official had discretion.  In other words, the immunity is not infinitely broad, but once it is determined that the acts involved judgment or choice on social, economic, or political policy considerations, the immunity applies even to abuses of discretion. However, there is no discretionary immunity for acts taken in bad faith. *See Falline v. GNLV Corp.*, 823 P.2d 888 (1991).  The *Falline* Court held that "bad faith" encompasses acts that are completely outside the authority of an official: " Bad faith . . . involves an implemented attitude that completely transcends the circumference of authority granted the individual or entity.  In other words, an abuse of discretion occurs within the circumference of authority, and an act or omission of bad faith occurs outside the circumference of authority." *Id.* at 892 n.3.  In *Davis v. City of Las Vegas*, the Ninth Circuit noted that under *Falline*, "where an officer arrests a citizen in an abusive manner not as the result of the exercise of poor judgment as to the force required to make an arrest, but instead because of hostility toward a suspect or a particular class of suspects (such as members of racial minority groups) or because of a willful or deliberate disregard for the rights of a particular citizen or citizens, the officer's actions are the result of bad faith and he is not immune from suit." 478 F.3d 1048, 1060 (9th Cir. 2007).  Likewise, the Alabama Supreme Court equates bad faith with "malice or willfulness." *Wright v. Wynn*, 682 So. 2d 1, 2 (Ala. 1996).  The difference between a non-actionable abuse of discretion and an actionable bad-faith violation of rights therefore appears to turn on the officer's mental state; when he crosses the line from recklessness as to a person's rights to malicious intent to violate them, he is no longer protected by the discretionary immunity statute, even if he initially satisfies the two-part test under *Martinez*.

The first prong of discretionary immunity is satisfied, because whether to restrain an person in a particular manner after arrest clearly involves personal deliberation and judgment. This prong of the test is usually easy to satisfy—a task must simply involve some element of

personal deliberation and choice so as not to be purely ministerial.  The second prong of the test

is trickier to apply.  It focuses on the purposes of discretionary immunity:

> Because the FTCA's discretionary-function exception is not a bright-line rule, federal courts applying the *Berkovitz-Gaubert* test must assess cases on their facts, keeping in mind Congress' purpose in enacting the exception: "to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." Thus, if the injury-producing conduct is an integral part of governmental policy-making or planning, if the imposition of liability might jeopardize the quality of the governmental process, or if the legislative or executive branch's power or responsibility would be usurped, immunity will likely attach under the second criterion.
>
>              . . . .
>
> We therefore adopt the *Berkovitz-Gaubert* approach and clarify that to fall within the scope of discretionary-act immunity, a decision must (1) involve an element of individual judgment or choice and (2) be based on considerations of social, economic, or political policy. In this, we clarify that decisions at all levels of government, including frequent or routine decisions, may be protected by discretionary-act immunity, if the decisions require analysis of government policy concerns. However, discretionary decisions that fail to meet the second criterion of this test remain unprotected by NRS 41.032(2)'s discretionary-act immunity.
>
>              Under the *Berkovitz-Gaubert* test, the decision to create and operate a public hospital and the college of medicine are the type of decisions entitled to discretionary-function immunity, because those decisions satisfy both prongs of the *Berkovitz-Gaubert* test; namely, they involve elements of judgment and choice, and they relate to social and economic policy. But, while a physician's diagnostic and treatment decisions involve judgment and choice, thus satisfying the test's first criterion, those decisions generally do not include policy considerations, as required by the test's second criterion.  In this case, as Dr. Martinez did not engage in policy-making decisions in his treatment of Mr. Maruszczak, he is not entitled to immunity from suit under NRS 41.032(2).

*Martinez*, 168 P.3d at 729 (footnotes omitted).  The *Martinez* Court rejected the previously used

discretionary–ministerial test, under which liability could only attach where a government actor

was bound to act in a narrowly particular way and strayed from that direction. *See id.* at 727 n.27

(citing *Maturi v. LVMPD*, 871 P.2d 932, 934 (Nev. 1994)).  *Martinez* clarified that officials

could be liable even where they exercised judgment if that judgment was not akin to social,

economic, or political policy-making, but the case still did not distinguish between (1) exercising

judgment in a way totally divorced from any existing policies; and (2) exercising judgment in a way motivated by existing policies.

The Nevada Supreme Court has applied *Martinez* several times, and it answered the question posed above in the latest such case.  In *Butler ex rel. Butler v. Bayer*, the Court ruled that defendants were not entitled to discretionary immunity as against a negligence claim for releasing a quadriplegic inmate outside his girlfriend's trailer when she was not home and when the trailer had not been prepared to receive him as planned. 168 P.3d 1055, 1059–60, 1067 (Nev. 2007).  Although the act involved personal judgment, it did not involve policy-making considerations.  In *City of Boulder City v. Boulder Excavating, Inc.*, the Court ruled that a city engineer who requested that a contractor replace one of its subcontractors had discretionary immunity against the subcontractor's claims for defamation and intentional interference with contractual relationship, because the city engineer was only executing city policy that was based on public policy considerations—the city had experienced problems in dealing with the plaintiff company in the past. 191 P.3d 1175, 1177, 1180–81 (Nev. 2008).  The *Boulder Excavating* Court thus took the first step in answering the question.  Most recently, in *Ransdell v. Clark County*, the Court answered the question clearly when it ruled that where there is no particular policy or statute in place making the act at issue a purely ministerial one, but where the actor's personal decision is made in furtherance of stated goals and policies, the statute protects the actor. 192 P.3d 756, 763 (Nev. 2009).  In *Ransdell*, a county inspector obtained a warrant to have debris involuntarily removed from Mr. Ransdell's property when he refused to remove it himself after several complaints, inspections, citations, and extensions of time. *Id.* at 759.  The County removed the debris, and Mr. Ransdell brought § 1983 and state law tort claims against the County. *Id.* at 759–60.  Applying *Martinez*, and examining a factually similar case from Iowa (which, like Nevada, had adopted the federal *Berkovitz–Gaubert* test), the Court ruled that the second prong of the test was satisfied "because the goals of the County in abating Ransdell's

property were motivated by environmental, health, and economic policies supported by Clark

County Code and statutory authority." *Id.* at 763.

*Ransdell* does much to clarify the scope of an every-day actor's immunity. After

*Martinez* but before *Ransdell*, it appeared that every-day actors such as county inspectors and

police officers would not be immune under the statute unless their actions were essentially

ministerial tasks particularly commanded by ordinances or official policies. Acts involving

every-day *implementation of* policy choices, but which did not themselves consist of policy

choices, did not appear to be protected. *Ransdell* makes it clear that individual acts involving the

implementation of covered types of policy choices are protected under the discretionary

immunity statute. *Id.* at 764 ("[B]ecause the County's actions were grounded on public policy

concerns, as expressed in the County Code and Nevada's abatement statute, they fit within the

second criterion of the *Berkovitz–Gaubert* test.").

Applying *Ransdell*, Powell is immune from the state law claims if the decision to restrain

Plaintiff was grounded on public policy concerns as expressed in statutes or official policies. If

however, Powell violated a statute or policy such that his decision cannot be said to be within

their scope, there is no discretionary immunity for either Powell or Lyon County.[3] There is no

evidence that Powell violated any statute or official policy in handcuffing Plaintiff in this case.

Under *Martniez* and *Ransdell*, Defendants are entitled to discretionary immunity from the state

law claims.

---

[3]Although there is no respondeat superior liability as to § 1983 claims, *see List*, 880 F.2d
at 1045, respondeat superior is a valid theory of liability agasint a government employer as to
common law torts, Nev. Rev. Stat. § 41.745(3)(b); *ASAP Storage, Inc. v. City of Sparks*, 173
P.3d 734, 745 & n.57 (Nev. 2007). Respondeat superior liability is statutorily precluded in
Nevada only in cases where the employee's conduct "[w]as a truly independent venture of the
employee; [w]as not committed in the course of the very task assigned to the employee; and
[w]as not reasonably foreseeable under the facts and circumstances of the case considering the
nature and scope of his employment." Nev. Rev. Stat. § 41.745(1)(a)–(c). This exception cannot
be said to apply in this case.

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion for Summary Judgment (ECF No. 23) is GRANTED.

IT IS FURTHER ORDERED that the Clerk shall enter judgment in favor of Defendants and close the case, accordingly.

IT IS SO ORDERED.

Dated this 1st day of August, 2011.

_____
· ROBERT C. JONES
United States District Judge